UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ST. JOHNS RIVERKEEPER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KEYSTONE PROPERTIES, L.L.C.,<br><br>Defendant. | Civil Case No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

Plaintiff ST. JOHNS RIVERKEEPER, INC. ("St. Johns Riverkeeper" or "Plaintiff"), by and through its counsel, hereby alleges:

## I. JURISDICTION AND VENUE

1. This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act" or the "CWA") and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-

02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2. On April 28, 2026, Plaintiff provided notice of Defendant's violations of the CWA and RCRA, and of Plaintiff's intention to file suit against Defendant ("Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region 4; the Secretary of the Florida Department of Environmental Protection ("FDEP"); the Director of the Northeast District of the FDEP; and to Defendant, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A) and RCRA, 42 U.S.C. § 6972(b)(1)(A). A true and correct copy of Plaintiff's Notice Letter with documentation of its receipt is attached as Exhibit A and is incorporated by reference.

3. More than ninety days have passed since notice was served on Defendant and the state and federal agencies.

4. Neither EPA nor the State of Florida has commenced and is diligently prosecuting a civil or criminal action in a court to require compliance with the violations alleged in this citizen enforcement action. 33 U.S.C. § 1365(b)(1)(B); 42 U.S.C. § 6972(b)(1)(B).

5. Venue is proper in the Middle District of Florida pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the alleged violations occurred within this judicial district.

## II. NATURE OF THE ACTION

6. Defendant KEYSTONE PROPERTIES, L.L.C. ("Keystone") operates a private port and terminal facility ("the Facility") on the west bank of the St. Johns River in Jacksonville, Florida. The Facility includes a main bulkhead and terminal area, as well as a separate area used for the storage and handling of coal combustion residuals ("CCR").

7. This action concerns Keystone's continued noncompliant storage, handling, and disposal of CCR. Keystone has handled more than 2 billion pounds of CCR since 2022 alone, without complying with many of the federal environmental safeguards governing those activities.

8. Keystone's operations have resulted in ongoing and recurring releases of CCR and other pollutants to the St. Johns River and surrounding environment, including through contaminated stormwater, releases associated with its material-loading and unloading operations, groundwater migration, and fugitive dust emissions. Keystone has also stored substantial quantities of CCR in areas outside the previously authorized CCR storage area and directly over unlined ground and, upon information and belief, has conducted construction activities after its Construction Generic Permit expired, without coverage under an effective NPDES construction stormwater permit.

9. These practices violate the CWA's prohibition against unauthorized discharges of pollutants, and also multiple requirements of RCRA governing the storage and disposal of CCR.

10. Keystone has been formally notified of these violations and given an opportunity to bring its operations into compliance. FDEP has likewise determined that Keystone was improperly storing or disposing of CCR, that Keystone had failed to comply with rules applicable to CCR landfills, and that contaminated stormwater was potentially being discharged to surface water and groundwater. Yet the violations alleged in this Complaint remain ongoing. Plaintiff therefore brings this action to obtain declaratory and injunctive relief, civil penalties, and other relief necessary to compel compliance with federal law and to protect the St. Johns River and surrounding communities.

## III. PARTIES

11. Plaintiff St. Johns Riverkeeper is a Jacksonville-based non-profit public benefit corporation with members throughout Northeast and Central Florida, including in Duval County. St. Johns Riverkeeper's mission is to defend the St. Johns River and advocate for its protection. To further its mission, St. Johns Riverkeeper actively seeks federal and state implementation of the CWA and the RCRA, and, where necessary, directly initiates enforcement actions on behalf of its members.

12. St. Johns Riverkeeper's members live near, swim in, fish, boat, recreate in, and otherwise use and enjoy the St. Johns River and its surrounding environment. For example, one member of St. Johns Riverkeeper owns a business located directly on the St. Johns River, resides directly on the St. Johns River, and regularly fishes in the St. Johns River. The member regularly fishes, recreates, and otherwise uses and enjoys the portion of the river affected by Keystone's activities and intends to continue doing so. Pollution and degradation of the river's water quality directly impair the member's use and enjoyment of the river and his substantial interest in maintaining a healthy St. Johns River.

13. Members of St. Johns Riverkeeper live, work, and gather in the neighborhood directly adjacent to the Facility, where fugitive dust from CCR and other stockpiles can migrate off site. Stormwater from the Facility flows into nearby waters and may also, at times, flow off site into the surrounding neighborhood. Exposure to airborne CCR poses health risks to these members, particularly those with respiratory conditions or weakened immune systems. Fugitive dust emissions are ongoing and regularly coat members' homes and vehicles, interfere with members' use and enjoyment of their homes and outdoor spaces, settle onto and into the ground on surrounding properties, and may adversely affect property values.

14. Defendant KEYSTONE PROPERTIES, L.L.C. is a Florida limited liability company.

15. Keystone operates the Facility and is the permittee of record on the environmental permits and authorizations governing its operations.

16. The land, buildings, and stormwater infrastructure comprising the Keystone Facility are owned or controlled by Keystone Properties, L.L.C. or various affiliated Keystone entities, including Keystone Investments, L.L.C. and Keystone Terminal Holdings, LLC.

17. Keystone's principal place of business is located at 1915 Wigmore St, Jacksonville, FL 32206.

## IV. STATUTORY BACKGROUND

### Clean Water Act

18. Section 301(a) of the CWA prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the CWA. 33 U.S.C. § 1311(a).

19. Section 402(p) of the CWA establishes a framework for regulating industrial stormwater discharges under the NPDES program. 33 U.S.C. § 1342(p). The CWA authorizes the EPA to issue NPDES permits directly and also to delegate the authority to issue NPDES permits to state agencies.

20. States with EPA-approved NPDES permit programs are authorized to regulate industrial stormwater discharges through individual permits issued to dischargers or through general permits that cover a category of discharges. 33 U.S.C. § 1342(p).

21. Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, the EPA Administrator authorized the FDEP to issue NPDES permits, including general NPDES permits in Florida.

22. Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for discharges of pollution without a NPDES permit. 33 U.S.C. §§ 1362(5), 1365(a)(1), (f). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the CWA are also subject to an assessment of civil penalties up to the statutory maximum, currently $68,445 per day per violation, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365. *See* 40 C.F.R. §§ 19.1-19.4.

**Resource Conservation and Recovery Act**

23. RCRA is a bedrock environmental statute that regulates the disposal of solid and hazardous waste. Congress enacted RCRA in 1976 with the avowed intention of closing "the last remaining loophole in environmental law, that of unregulated land disposal of discarded materials." *Me. People's All. v. Mallinckrodt, Inc.*, 471 F.3d 277, 287 (1st Cir. 2006) (citing H.R. Rep. No. 94-1491, pt. 1, at 4, reprinted in 1976 U.S.C.C.A.N. 6238, 6241). In 2015, EPA published a final rule to regulate the disposal and storage of CCR as a solid waste under

subtitle D of RCRA.[1] CCR include fly ash, bottom ash, boiler slag, and flue gas desulfurization materials generated from burning coal. 40 C.F.R. § 257.53.

24. RCRA defines "solid waste" to include "discarded material," 42 U.S.C. § 6903(27), and the CCR accumulated and stockpiled at the Facility constitute discarded material within the meaning of RCRA. *See Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 51 F. Supp. 3d 593, 610–11 (W.D. Pa. 2014).

25. The CCR Rule states that facilities and practices which fail to satisfy any of the criteria in 40 C.F.R. §§ 257.50–257.107 are considered open dumps or constitute open dumping, as prohibited under section 4005 of RCRA. 40 C.F.R. § 257.1(a)(1)–(2); 42 U.S.C. § 6945(a).

26. An action for injunctive relief under RCRA is authorized by 42 U.S.C. § 6972(a). Congress granted citizens the power to enforce RCRA "standards [or] regulations" through the Act's citizen suit provision. *See* 42 U.S.C. § 6972(a)(1)(A). Violators of RCRA are also subject to an assessment of civil penalties up to the statutory maximum, currently $93,058 per day per violation, pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g). *See also* 40 C.F.R. §§ 19.1-19.4.

---

[1] EPA, Hazardous and Solid Waste Management System; Disposal of Coal Combustion Residuals from Electric Utilities; Final Rule, 80 Fed. Reg. 21,302, 21,312 (Apr. 17, 2015); as amended by Technical Amendments to the Hazardous and Solid Waste Management System, Disposal of Coal Combustion Residuals from Electric Utilities—Correction of the Effective Date, 80 Fed. Reg. 37,988 (July 2, 2015); 40 C.F.R. § 257.50 et seq.

## V. STATEMENT OF FACTS

27. Defendant owns and/or operates the Facility as an off-site disposal unit that receives CCR generated by AES Puerto Rico, the owner and operator of a coal-fired electric generating station located in Guayama, Puerto Rico.

28. The non-CCR storage area of Keystone's Facility is covered under Florida's Multi-Sector Generic Permit ("MSGP"), Facility ID FLR05G264-004, a National Pollutant Discharge Elimination System ("NPDES") stormwater permit issued by FDEP pursuant to its delegated authority under the Clean Water Act. The MSGP authorizes industrial stormwater discharges from the non-CCR storage area through designated outfalls to the St. Johns River, and is effective from March 11, 2023, through March 10, 2028. Keystone's Stormwater Pollution Prevention Plan depicts runoff from the non-CCR storage area being routed through separate basins and treatment features, including dry retention swales and wet detention ponds before being conveyed through ditches, pipes, and outfalls, including into the drainage ditch that runs behind the CCR storage area, which ultimately discharges to the St. Johns River.

29. Keystone also obtained a NPDES Generic Permit for Stormwater Discharge from Large and Small Construction Activities, Facility ID FLR10TS04, on July 17, 2020. This permit authorizes discharges of polluted stormwater, subject to certain limits, from areas of construction at the Keystone Facility. Keystone's Construction Generic Permit (CGP) expired on July 17, 2025.

30. The CCR storage area is separated from the Facility's main bulkhead and terminal area by a drainage ditch that exits the Facility and discharges into the St. Johns River. Stormwater contacting CCR stored outside the previously authorized CCR storage area bypasses treatment systems, on-site ponds, swales, and other stormwater management controls, and enters the drainage ditch and the St. Johns River without treatment. CCR and CCR-contaminated stormwater from these unauthorized storage areas also reach the St. Johns River via groundwater migration that is functionally equivalent to a direct discharge.

**Figure 1: Keystone Facility Overview Satellite Imagery**



31. Upon arrival by barge from Puerto Rico, the CCR is unloaded and then stored in large, uncovered outdoor stockpiles next to the St. Johns River.

32. During unloading operations, Keystone discharges CCR and other materials directly into the St. Johns River from vessels, hoppers, conveyors, and other equipment. These operations also cause CCR and other materials to spill onto the ground, where stormwater can mobilize the spilled material and convey it through ditches, drains, and other discrete conveyances to the St. Johns River and adjacent wetlands, particularly where adequate BMPs are not implemented and maintained. Photographic and video evidence documents unauthorized discharges from 2022 through as recently as July 19, 2026.

**Figure 2: A still image from video of fugitive dust from Keystone's unloading operations, recorded by a St. Johns Riverkeeper Member on April 3, 2022.**



Source: Video Recorded by a St. Johns Riverkeeper Member, April 2022

33. CCR contains arsenic, lead, cadmium, mercury, sulfate, chromium, boron, naturally occurring radioactive materials, and other constituents that can be released into the environment through leaching, runoff, and fugitive dust.

34. Because CCR sinks once it enters the water, it smothers aquatic organisms and plants, and studies have found elevated levels of these chemicals in fish from waterways receiving CCR discharges. CCR exposure threatens ecosystems and nearby residents, and has been associated with increased risk of cancer, cognitive deficits, heart damage, lung disease, kidney disease, and birth defects.[2]

**Unpermitted CCR Discharges**

35. Keystone has never obtained a NPDES permit that would authorize it to discharge pollutants from the CCR storage area to the St. Johns River. Instead, Keystone obtained an Industrial Wastewater Permit Exemption (Exemption No. FLAB07221) for its CCR storage area that became effective on May 14, 2021, and remained in effect until May 13, 2026. The exemption was expressly conditioned on the absence of industrial wastewater discharges. Despite that condition, pollutants from the CCR storage area have persistently discharged since construction of the CCR area was completed, and continue to be

---

[2] Barbara Gottlieb et al., Physicians for Soc. Responsibility & Earthjustice, *Coal Ash: The Toxic Threat to Our Health and Environment* (2010).

discharged, in substantial quantities and through multiple, widespread discharge pathways, including via stormwater runoff to the adjacent drainage ditch and the St. Johns River, in violation of both the exemption's terms and the CWA's prohibition on unpermitted discharges.

36. On May 21, 2026, FDEP issued Warning Letter No. WL26-094 to Keystone concerning its CCR storage operations. A true and correct copy of the Warning Letter is attached as Exhibit B. In the Warning Letter, FDEP concluded that Keystone had violated multiple conditions of its Industrial Wastewater Permit Exemption and made, among others, the following findings:

> Facility operated in a way which was inconsistent with the current wastewater exemption. Facility failed to maintain all coal ash on the impervious surface in the designated area.
>
> Stormwater from the coal ash piles outside of the designated exemption area are not flowing into the proper lined stormwater treatment pond. Contact stormwater runoff is being potentially discharged to surface waters or groundwater.
>
> Facility failed to notify the department of potential release of pollutants from the site resulting from improper storage of aggregate.
>
> The Facility does not follow Best Management Practices (BMPs) to ensure the Facility operates according to the designs submitted to the department.
>
> The Facility is storing or disposing of coal combustion residuals (CCR) without Department authorization. The Facility failed to comply with rules applicable to CCR landfills.

37. According to Keystone’s permit exemption documentation, CCR was to be stored exclusively on a sloped concrete pad designed to direct contact

stormwater into a lined pond. Satellite imagery shows that, since construction of the pad in late 2021/early 2022, substantial quantities of CCR have regularly been stored in uncovered, unlined areas outside the previously authorized exempt area. The additional unpermitted CCR storage areas lack both adequate permanent dust-suppression sprinklers and berms, swales, or other stormwater controls designed to capture CCR-contaminated stormwater and direct it to the lined pond or other adequate stormwater treatment infrastructure. As a result, substantial quantities of stormwater have contacted and been contaminated by CCR stored directly over unlined ground, allowing CCR constituents to infiltrate into the shallow groundwater beneath the Facility and for CCR-contaminated stormwater to flow into the adjacent drainage ditch and into the St. Johns River. Because these areas were not designed for CCR storage, they also lack BMPs designed to minimize releases of CCR-contaminated stormwater.

**Figure 3: Satellite Imagery from January 2025 Showing CCR Storage Outside the Designated Exempt Concrete Storage Pad.**




38. Keystone's own groundwater monitoring data establish that shallow groundwater beneath the Facility flows generally north and east toward the St. Johns River. Monitoring well CMW-2A, located near the CCR storage area, shows substantial increases in constituents associated with CCR leaching following placement of the CCR stockpiles in this area. Most significantly, sulfate

increased from 50,900 µg/L in April 2022 to 221,000 µg/L by December 2022, 490,000 µg/L by December 2024, and ultimately to 540,000 µg/L by June 2025. Sulfate is associated with the coal-combustion process that generated the CCR stored at the Facility, and the magnitude and timing of this increase are consistent with and provide strong evidence of CCR leaching. Chloride and arsenic concentrations also increased substantially above historical concentrations at CMW-2A, and the increases in these constituents after years of CCR storage are inconsistent with the historical concentrations measured at the well. Substantial portions of the CCR piles are stored directly on unlined ground, where rainfall and stormwater can leach CCR constituents into the shallow groundwater and generate CCR-contaminated runoff. The location of the well, groundwater flow direction, site geology, and the timing and magnitude of these increases provide strong evidence that CCR constituents are infiltrating into and contaminating shallow groundwater beneath the Facility.[3]

39. When CCR pollutants from Keystone infiltrate into shallow groundwater a short distance from the river, those pollutants migrate with the groundwater to the St. Johns River in a manner that is the functional equivalent of a direct discharge.

---

[3] Southern Monitoring & Environmental, LLC, *Water Quality Monitoring Report* (Jan. 2025); Southern Monitoring & Environmental, LLC, *Water Quality Monitoring Report* (Aug. 2025), DEP Permit No. 286801-020SF.

**Fugitive Dust Emissions**

40. When not properly managed and adequately controlled, CCR and other materials from Keystone can be emitted into the air as fugitive dust while being stored, loaded, unloaded, or transported.

41. Keystone has a documented history of failing to adequately control fugitive dust from its material-handling operations, including the storage and transfer of CCR. More than twenty complaints submitted by neighboring residents to the City of Jacksonville between July 23, 2021, and December 17, 2025, describe fugitive dust repeatedly leaving the Facility and entering surrounding residential neighborhoods. The complaints consistently describe fugitive dust emissions over a period of years, demonstrating that the releases are recurring and persistent.

42. On December 8, 2023, the City of Jacksonville Environmental Quality Division ("EQD") issued a Cease-and-Desist Citation after finding that Keystone's coal ash stockpile “did not have a sprinkler system set up to control unconfined particulate matter.” EQD found that the deficiency “resulted in complaints about particulate matter (PM) leaving the site and settling on vehicles.” A true and correct copy of this citation is attached as Exhibit C. The City's enforcement action did not end the reported fugitive-dust problems. For example, on September 16, 2024, a resident reported that a “huge dust cloud came over [the] entire neighborhood,” coating vehicles, clothing, and porches

with dust, and further reported that Keystone's conveyor operations had been running throughout the weekend and were blowing material into the surrounding neighborhood.

43. After these emissions settle pollutants on surrounding properties, the pollutants are mobilized in subsequent storms and carried into the St. Johns River through various point sources, including municipal storm drains.

**Figure 4: Photograph taken by a St. Johns Riverkeeper Member on September 2, 2023, of fugitive dust on a vehicle at a neighboring property.**



## VI. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### Unpermitted Discharges of CCR and CCR-Contaminated Stormwater

44. Plaintiff incorporates and re-alleges paragraphs 1–22, and 27–43 as if fully set forth herein.

45. Keystone's CCR storage and handling operations result in ongoing and recurring discharges of CCR and CCR-contaminated stormwater to the St. Johns River and other waters of the United States through point sources, including stormwater outfalls, drainage ditches, drains, culverts, and other discrete conveyances.

46. Keystone also channels and conveys CCR-contaminated stormwater to areas where the pollutants in that stormwater infiltrate into the ground and through the shallow groundwater into the St. Johns River and other waters of the United States.

47. These discharges are not authorized by Keystone's MSGP or any other NPDES permit. Keystone has therefore discharged, and continues to discharge, pollutants from point sources into waters of the United States without authorization, in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

48. Keystone's former Industrial Wastewater Permit Exemption was expressly conditioned on the absence of discharges from the CCR storage area

and therefore did not authorize these discharges. The exemption expired on May 13, 2026, and Keystone continues to discharge pollutants from the CCR storage area without NPDES authorization.

**SECOND CAUSE OF ACTION:**

**Unpermitted Discharges During Material Loading and Unloading**

49. Plaintiff incorporates and re-alleges paragraphs 1–22, and 27–36 as if fully set forth herein.

50. Keystone's loading, unloading, transfer, conveyor, and other material-handling operations result in ongoing and recurring discharges of pollutants directly into the St. Johns River. These operations also can result in pollutants spilling onto the ground, where stormwater can mobilize the material and convey it through ditches, drains, and other discrete conveyances to the St. Johns River. These discharges are not authorized by Keystone's MSGP or any other NPDES permit and violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

51. Photographic and video evidence documents unauthorized discharges during numerous material-handling and unloading events, demonstrating that these discharges have occurred repeatedly since at least 2022 and remain ongoing and recurring.

52. Each unpermitted discharge of pollutants from Defendant's Facility into waters of the United States without authorization under a valid NPDES

permit constitutes a separate violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and each day on which such an unauthorized discharge occurs or continues constitutes a separate day of violation for purposes of the civil penalty provisions of 33 U.S.C. §§ 1319(d) and 1365(a).

**THIRD CAUSE OF ACTION:**

**Unpermitted Stormwater Discharges From Construction Activities**

53. Plaintiff incorporates and re-alleges paragraphs 1–22, and 29 as if fully set forth herein.

54. Keystone's CGP expired on July 17, 2025. Satellite imagery following expiration of the CGP shows the continued presence of construction materials and apparent ongoing construction-related activity at or near the conveyor and bulkhead construction areas. Upon information and belief, Keystone has continued construction activity after expiration of its CGP without renewed CGP coverage or other NPDES authorization.

55. The CGP requires operators to install, implement, and maintain pollution-prevention BMPs to minimize the exposure of construction materials, wastes, and other pollutants to rain and stormwater; minimize discharges from spills and leaks; and implement spill-prevention and response procedures. The CGP also requires erosion and sediment controls designed to control stormwater volume and velocity, minimize exposed soil and sediment discharges, minimize off-site tracking of sediment, and minimize dust generation.

56. Keystone has failed to implement and maintain required erosion and sediment controls and other BMPs in connection with its construction activities, including its bulkhead extension project. These failures constitute violations of the CGP while that permit was in effect.

57. Keystone has continued construction-related activity following expiration of its CGP without renewed permit coverage. Stormwater discharges associated with such construction activity are therefore unpermitted discharges in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

**FOURTH CAUSE OF ACTION:**

**Violation of CCR Landfill Liner and Leachate Collection Requirements**

58. Plaintiff incorporates and re-alleges paragraphs 1–17, and 23–39 as if fully set forth herein.

59. Section 257.70 requires new CCR landfills and lateral expansions of CCR landfills to be designed, constructed, operated, and maintained with either a composite liner or an approved alternative composite liner, together with a leachate collection and removal system meeting the Rule's requirements.

60. Keystone is repeatedly storing substantial quantities of CCR outside the designated concrete pad and outside the lined collection system constructed under the terms of the previous wastewater exemption.

61. Among other grounds supporting application of the CCR landfill requirements, Keystone's repeated placement and accumulation of substantial

quantities of CCR in uncovered areas directly on unlined ground constitutes land disposal of CCR subject to the CCR landfill requirements of the CCR Rule, consistent with FDEP's determination that Keystone was storing or disposing of CCR and had failed to comply with rules applicable to CCR landfills.

62. Upon information and belief, before constructing a new CCR landfill, Keystone did not obtain the certification from a qualified professional engineer or regulatory approval required by 40 C.F.R. § 257.70(e) that the design of the landfill—including the required composite liner and leachate collection and removal system—met the requirements of § 257.70. Upon information and belief, after completing construction, Keystone also did not obtain the certification or approval required by § 257.70(f) that the landfill had been constructed in accordance with those requirements.

63. Based on these failures, Keystone is in violation of 40 C.F.R. § 257.70.

**FIFTH CAUSE OF ACTION:**

**Violation of CCR Surface Impoundment Liner Requirements**

64. Plaintiff incorporates and re-alleges paragraphs 1–17, and 23–39 as if fully set forth herein.

65. Section 257.72 requires any new CCR surface impoundment and any lateral expansion of an existing or new CCR surface impoundment to be designed, constructed, operated, and maintained with either a composite liner or

an alternative composite liner that satisfies the requirements incorporated from 40 C.F.R. § 257.70(b) and (c). 40 C.F.R. § 257.72(a).

66. The pond adjacent to the CCR storage area is a man-made excavation designed to receive and hold an accumulation of both CCR and liquids. The pond receives CCR and CCR-contaminated stormwater from the CCR storage area and is designed to treat and store CCR. It therefore constitutes a CCR surface impoundment within the meaning of 40 C.F.R. § 257.53.

67. The pond was constructed, and first received CCR and CCR-contaminated stormwater, after October 19, 2015. It therefore constitutes a new CCR surface impoundment within the meaning of 40 C.F.R. § 257.53.

68. Keystone has identified only a 60-mil HDPE liner in the industrial wastewater permitting exemption materials. That specification, standing alone, describes only the upper geomembrane component of a compliant liner system. It does not, by itself, demonstrate compliance with Section 257.72.

69. Upon information and belief, Keystone's lined pond was constructed without the professional engineer certification or agency approval required before construction and without the required post-construction certification confirming that the liner was constructed in accordance with § 257.72.

70. Based on these failures, Keystone is in violation of 40 C.F.R. § 257.72.

## SIXTH CAUSE OF ACTION:

### Violation of CCR Surface Impoundment Structural Integrity Requirements

71. Plaintiff incorporates and re-alleges paragraphs 1–17, 23–39, and 65–70 as if fully set forth herein.

72. Section 257.74 requires new CCR surface impoundments, other than incised units, to have a permanent identification marker and to undergo initial and periodic hazard-potential classification assessments certified by a qualified professional engineer. 40 C.F.R. § 257.74(a).

73. Engineering plans for the pond depict constructed side slopes extending above the adjacent existing ground surface. Accordingly, the pond is not an incised CCR surface impoundment within the meaning of 40 C.F.R. § 257.53. Upon information and belief, Keystone has not installed the permanent identification marker or conducted the initial and periodic certified hazard-potential classification assessments required by 40 C.F.R. § 257.74(a).

74. Accordingly, Keystone is in violation of 40 C.F.R. § 257.74.

## SEVENTH CAUSE OF ACTION:

### Violation of CCR Fugitive Dust Control Requirements

75. Plaintiff incorporates and re-alleges paragraphs 1–17, 23–37, and 40–43 as if fully set forth herein.

76. Under § 257.80, "[t]he owner or operator of a CCR unit must adopt measures that will effectively minimize CCR from becoming airborne at the Facility, including CCR fugitive dust originating from CCR units, roads, and other CCR management and material handling activities." 40 C.F.R. § 257.80(a).

77. Further, CCR units must prepare and operate in accordance with a CCR fugitive dust control plan as specified in paragraphs (b)(1) through (7) of § 257.80. 40 C.F.R. § 257.80(b).

78. Keystone has not developed and is not operating under a formal CCR fugitive dust control plan that includes § 257.80(b)'s specific requirements.

79. Keystone has also failed to adopt and maintain measures that effectively minimize CCR from becoming airborne, as demonstrated by ongoing and recurring fugitive dust emissions from its CCR storage and material-handling operations.

80. Accordingly, Keystone is in ongoing violation of 40 C.F.R. § 257.80.

## EIGHTH CAUSE OF ACTION:

### Violation of Run-on and Runoff Control Requirements

81. Plaintiff incorporates and re-alleges paragraphs 1–17, and 23–39 as if fully set forth herein.

82. Section 257.81 requires CCR landfills and lateral expansions to maintain run-on and run-off control systems designed and constructed to control stormwater associated with the CCR landfill. 40 C.F.R. § 257.81.

83. Keystone's own CCR site plan shows a collection-and-reuse system limited to CCR stored on the sloped concrete pad, with runoff gratings, a runoff vault, and a lined pond. CCR have repeatedly been stored outside the concrete pad and outside the boundaries of that collection system.

84. These additional unauthorized CCR storage areas lack berms, swales, grates, or other stormwater controls designed to prevent run-on or collect and control CCR-contaminated runoff.

85. Based on these failures and deficiencies, Keystone is in ongoing violation of 40 C.F.R. § 257.81.

## NINTH CAUSE OF ACTION:

### Violation of CCR Groundwater Monitoring, Recordkeeping, Notification, and Reporting Requirements

86. Plaintiff incorporates and re-alleges paragraphs 1–17, and 23–39 as if fully set forth herein.

87. Section 257.90 and related provisions of the CCR Rule require groundwater monitoring and corrective action, including installation of an appropriate groundwater monitoring system, implementation of a groundwater sampling and analysis program, and detection monitoring. 40 C.F.R. §§ 257.90–257.98.

88. Section 257.105 requires owners and operators subject to its requirements to maintain the information specified by that section in a written

operating record and generally to retain those records for at least five years. 40 C.F.R. § 257.105.

89. Section 257.106 requires the notifications specified by that section to be provided to the relevant State Director and/or Tribal authority within the deadlines prescribed by the Rule. 40 C.F.R. § 257.106.

90. Section 257.107 requires maintenance of a publicly accessible internet site containing the information specified by the Rule. 40 C.F.R. § 257.107. The required information must be immediately available to the public without registration or a document request and must be clearly identifiable, printable, and downloadable.

91. Keystone has not established and implemented a groundwater monitoring system and sampling-and-analysis program that comply with the CCR Rule, prepared the required groundwater-monitoring reports, maintained the required information in its operating record, provided the required notifications, or maintained a publicly accessible CCR website containing the required information.

92. Each of these failures constitutes an independent and ongoing violation of the applicable requirements of 40 C.F.R. §§ 257.90–257.98, 257.105, 257.106, and 257.107.

## VII. RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A. Declare that Defendant has violated and continues to violate the CWA and RCRA as alleged herein;

B. Enjoin Defendant from discharging pollutants, including polluted stormwater and unauthorized non-stormwater discharges, from the Facility except as authorized by a valid NPDES permit;

C. Enjoin Defendant from conducting construction activities resulting in stormwater discharges without obtaining and complying with all NPDES permit coverage requirements;

D. Order Defendant to implement and maintain appropriate stormwater pollution-control measures and BMPs necessary to prevent and minimize unauthorized discharges of pollutants from the Facility;

E. Order Defendant to obtain all permits, approvals, and authorizations required under law before continuing CCR storage, handling, treatment, or disposal operations;

F. Order Defendant to pay civil penalties of up to $68,445 per day for each violation pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a), and up to $93,058 per day for each violation pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), as adjusted pursuant to 40 C.F.R. Part 19;

G. Order Defendant to take all appropriate actions necessary to remediate and restore waters, groundwater, and other natural resources contaminated or impaired by its unlawful activities;

H. Award Plaintiff its costs of litigation, including reasonable attorney and expert-witness fees, as authorized by the CWA, 33 U.S.C. § 1365(d), and RCRA, 42 U.S.C. § 6972(e); and

I. Award such other and further relief as this Court deems just and appropriate.

Dated: August 19, 2026

Respectfully submitted,
By: /s/ John Henry November

John Henry November, Esq.
Florida Bar #88760
Public Trust Environmental Legal Institute of Florida, Inc.
2029 Third Street North
Jacksonville Beach, FL 32250
Telephone: (904) 247-1972
Facsimile: (904) 247-5433
Email: John@PublicTrustLaw.org
Attorney for Plaintiff St. Johns Riverkeeper